UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| ETHEL BROCK, et ux., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 6: 06-130-DCR |
| ) | |
| V. ) | |
| ) | |
| BOB TAYLOR, et al., ) | **MEMORANDUM OPINION** |
| ) | |
| Defendants. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On April 25, 2007, a duly-impaneled jury returned a verdict in favor of the Plaintiffs, Ethel and Connie Brock, in the sum of $250,090.07. Thereafter, on April 26, 2007, this Court entered an Order and Preliminary Judgment detailing that verdict and directing the parties to submit either an agreed proposed final judgment or separate proposed final judgments for the Court's consideration. [Record No. 73] In response, the parties stated that they were unable to reach an agreement regarding the distribution of funds. Therefore, they submitted three separate proposed final judgments. [Record Nos. 74, 75, 76]

The parties have not requested a hearing on the issues presented in the proposed final judgments, and the matter stands submitted at this time. In summary, the Plaintiffs contend that the distribution of funds is controlled by *AIK v. Minton*, 192 S.W.3d 415 (Ky. 2006), and that the subrogated parties, Bell County Board of Education and Kentucky School Board Association, Inc. (collectively, the "School Board") are not entitled to any recovery on their claims. Defendants Bob Taylor and Clinch Mountain Transport (collectively, "Clinch

-1-

Mountain") and the School Board contend that the distribution of funds should be controlled by the stipulation entered prior to the start of trial by the Plaintiffs and the School Board. [Record No. 59] Clinch Mountain further argues that it is entitled to a credit of $10,000 against the jury's award under the Kentucky Motor Vehicle Reparations Act.

Prior to the start of trial in this matter, the Plaintiffs entered into a stipulation with the School Board regarding the payment of workers' compensation benefits. According to that stipulation, as of April 16, 2007, the School Board had paid medical benefits or expenses to or on behalf of Plaintiff Ethel Brock in the amount of $25,545.18 and income benefits in the amount of $16,673.33 as a result of the accident. The agreement further provided that:

> 8. Pursuant to the provisions of KRS 342.700(1), if Ms. Brock is awarded damages in this action against the defendants, Bob Taylor and Clinch Mountain Transport, to compensate her for past medical expenses, future medical expenses, lost wages and/or loss of future earning capacity, then the defendants, Bell County Board of Education and Kentucky School Board Association, are entitled to reimbursement, out of such damages, of their past payments of income benefits and medical expenses, and/or credit against their future liabilities for income benefits and medical expenses, in the manner to be determined by the Court by its application of KRS 342.700(1), Kentucky court opinions interpreting that statute, and these stipulated facts, without need for the defendants, Bell County Board of Education and Kentucky School Board Association to present any further evidence to establish the amounts paid by KSBIT, the propriety of those payments, or the fact that the defendants, Bell County Board of Education and Kentucky School Board Association, are subrogated to the rights plaintiff, Ethel Brock, to the extent of such payments and the aforesaid future liabilities.
>
> 9. The amounts otherwise recoverable by KSBIT shall be reduced by one-third (1/3), this being the portion of fees for the plaintiffs' attorneys KSBIT has agreed to pay. Once the Court determines the amount of reimbursement payable to KSBIT for its past workers' compensation payments, one-third (1/3) of that amount will be deducted so that two-thirds (2/3) actually will be paid to KSBIT. Likewise, once the Court determines the amount of credit to which KSBIT is entitled against the liability for future workers' compensation benefits, that amount will also be reduced by one-third and the credit awarded to KSBIT will be two-thirds of the original amount.

[Record No. 59, ¶ 8,9]

As a starting point, the Court notes that Section 342.700(1) of the Kentucky Revised Statutes provides that,

> [w]henever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, but he shall not collect from both. If the injured employee elects to proceed at law by civil action against the other person to recover damages, he shall give due and timely notice to the employer and the special fund of the filing of the action. If compensation is awarded under this chapter, the employer, his insurance carrier, the special fund, and the uninsured employer's fund, or any of them, having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, *less the employee's legal fees and expense*.

KRS § 342.700(1) (emphasis added). Recently, in *AIK v. Minton*, the Kentucky Supreme Court explicitly held that this statute should be given "its literal and plain meaning." *Minton*, 192 S.W.3d at 418. That is, "the entire cost of pursuing the tort award (including those portions which do not duplicate the benefits paid as workers' compensation) should be deducted from an employer/insurer's subrogation credit." *Id.* In *Minton*, the court upheld the trial court's ruling that the worker's compensation insurance carrier was not entitled to any subrogation recovery because the injured party's legal fees and expenses exceeded the total amount of benefits paid by the insurance carrier. *Id.* at 417.

In the present case, the Plaintiffs contend that the School Board is not entitled to any recovery on its subrogation claims because the total amount of attorneys' fees and costs ($84,168.30) exceeds the total amount of benefits paid by the School Board ($25,545.18 in past medical expenses and $16,673.33 in lost wages). However, the School Board contends that the

Plaintiffs are bound by the stipulation entered prior to the start of trial and that Paragraph 9 specifically addresses any attorney fee awards in this matter.

According to the School Board, the language in Paragraph 8 which addresses KRS § 342.700 and Kentucky court opinions is only addressed "to the manner in which the Court would compare the various items of common law damages against each of the kinds of recoveries available under the Workers' Compensation Act." [Record No. 74, p. 5] The School Board further contends that "[t]he specific controls the general, and if Paragraph 8 may have been construed as inviting reliance upon *AIK v. Minton* in determining how the attorney' fees were to be paid, then that provision is superseded by the more specific and direct language of Paragraph 9." *Id*.

As the Kentucky Court of Appeals noted in *Cantrell Supply, Inc. v. Liberty Mutual Insurance Co.*, 94 S.W.3d 381, 384-85 (Ky. App. 2002),

> An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation. It is valid if it satisfies the requirements associated with contracts generally, i.e., offer and acceptance, full and complete terms, and consideration. The primary object in construing a contract or compromise settlement agreement is to effectuate the intentions of the parties. "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible."

Cantrell, 94 S.W.3d at 348-85 (citations omitted). Further, "[a]bsent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Id*. at 385.

Here, the School Board's contention that Paragraph 9 should operate independent and in lieu of Paragraph 9 is contrary to the plain, unambiguous language of the document. As noted previously, Paragraph 8 of the stipulation states that, "if Ms. Brock is awarded damages . . . then the defendants, Bell County Board of Education and Kentucky School Board Association, are

entitled to reimbursement, out of such damages . . . in the manner to be determined by the Court by its application of KRS 342.700(1), Kentucky court opinions interpreting that statute, and these stipulated facts . . ." Paragraph 9 then states, "[t]he amounts *otherwise recoverable* by KSBIT shall be reduced by one-third (1/3), this being the portion of fees for the plaintiffs' attorneys KSBIT has agreed to pay. . . ." [Record No. 59 (emphasis added)]

The plain language of the stipulation clearly states that, after the Court has determined the amount to be awarded to the workers' compensation carrier under Kentucky law, that amount shall be reduced by one-third to compensate the Plaintiffs for their attorneys' fees. Although the School Board's argument that Paragraph 9 was meant to cover all of its liability for attorneys' fees and costs may seem reasonable, the School Board received valuable consideration in exchange for this agreement. In accordance with the stipulation, the School Board was not required to participate in the trial of this matter and was not required to prove its claims for the compensation paid to Plaintiff Ethel Brock. [See Record No. 59, ¶ 8] As the Kentucky Supreme Court noted in *Minton*,

> Tort claims involve a significant risk and require substantial energy in pursuing recovery. It is only fair to require employers/insurers benefiting from the fruits of such an endeavor to share in its costs. Moreover, it is not arbitrary that the entire cost of pursuing the tort award (including those portions which do not duplicate the benefits paid as workers' compensation) should be deducted from an employer/insurer's subrogation credit.

*Minton*, 192 S.W.3d at 418 (citations omitted).

Accordingly, because the amount of the benefits paid to or on behalf of Plaintiff Ethel Brock (totaling approximately $42,218.51)[1] does not exceed the legal fees and costs of the trial

---

[1] The Court notes that this is an approximate figure because the stipulation entered prior to the start of trial specifically notes that the workers' compensation insurance carrier has continued to pay lost wages at the rate of $343.78 every two weeks. [Record No. 59, ¶ 6]

-5-

($80,834.97)[2], the School Board is not entitled to any reimbursement for the past medical benefits and lost wages paid as of April 16, 2007, or any such benefits paid since the judgment of April 26, 2007. However, the School Board is still entitled to a credit for future medical expenses and future lost wages up to the amount of the judgment for future medical expenses and future lost wages under the Kentucky Supreme Court's decision in *AIK v. Bush*, 74 S.W.3d 251, 253 (Ky. 2002). *Bush*, 74 S.W.3d at 253 (noting that the legal fees and expenses are deducted from amounts already paid, but not from the future credits which it may or may not pay); KRS § 342.700(1). These credits shall be reduced by one-third, so that the School Board receives two-thirds of the credit, in accordance with the stipulation entered prior to the start of trial. [Record No. 59, ¶ 9]

Next, the Court will address Clinch Mountain's argument concerning the application of the Kentucky Motor Vehicles Reparation Act ("KMVRA"). Clinch Mountain contends that the jury's award for past medical expenses should be reduced by $10,000 pursuant to KRS §§ 304.39-060 and 304.39-020. There are three conditions precedent to the application of this credit under the KMVRA: first, the liability must sound in tort; second, the accident must occur in the Commonwealth of Kentucky; and third, the accident must arise out of the use of a motor vehicle. *Cooke v. Board of Claims*, 743 S.W.2d 32 (Ky. App. 1987). If these conditions are met, the Plaintiff's recovery for medical benefits shall be reduced by $10,000 pursuant to KRS § 304-39-060(2)(a). *See also Cooke*, 743 S.W.2d at 32.

---

[2] This amount differs slightly from the total legal fees and expenses submitted by the Plaintiffs because of the Court's reduction of Plaintiff Ethel Brock's award for past medical expenses in the amount of $10,000 as discussed *infra*.

In the present case, Clinch Mountain stipulated to tort liability prior to the start of trial, and the accident at issue involved two motor vehicles and occurred in Bell County, Kentucky. Therefore, the $10,000 credit is applicable, and the jury award for medical benefits will be reduced by that amount in accordance with Kentucky law. However, Clinch Mountain is not entitled to receive the "windfall" of this credit, as discussed by the Kentucky Court of Appeals in *Jefferson County Board of Education v. Estate of Cowles*, 982 S.W.2d 224 (Ky. App. 1998). Rather, the full amount of the credit will be awarded to the School Board to recompense it for the benefits paid to Plaintiff Ethel Brock. *See Jefferson*, 982 S.W.2d at 227.

In *Jefferson*, the injured employee's workers' compensation insurance carrier filed a claim against the third-party tortfeasor pursuant to KRS § 342.700. The employee then filed a separate suit against the third-party, and the two cases were consolidated. The trial court found that the third-party was entitled to a $10,000 credit against the subrogated claims under KRS § 304.39-060. The employee and the insurance carrier then entered into a stipulation concerning the amount of benefits paid, and the insurance carrier reserved the right to appeal the trial court's decision regarding the application of § 304.39-060. On appeal, the Kentucky Court of Appeals reversed the trial court's decision and held that "tortfeasors are not entitled to a $10,000 credit under the MVRA in actions pursuant to KRS 342.700 to recover workers' compensation benefits paid to injured employees." *Id*. The court reasoned that "KRS 342.700 provides the authority for the Board to recover the first $10,000 in benefits that it paid to [the injured employee]. . . . if the Board is unable to recover the $10,000 in question, then the tortfeasor, Cowles, would avoid any liability for that $10,000 while the Board, an innocent party, would be forced to assume that responsibility." *Id*. at 226.

Here, the School Board filed a crossclaim against Clinch Mountain pursuant to KRS § 342.700, and, as in *Jefferson*, the Plaintiffs and the School Board stipulated to the amount of medical benefits paid as a result of the accident. Although Plaintiff Ethel Brock is expressly prohibited from collecting the first $10,000 under the KMRVA, the School Board is entitled to collect that full amount.[3] Therefore, the Plaintiff's award for medical expenses will be reduced by $10,000, and the School Board will receive that $10,000 in compensation for the medical benefits paid.

A final judgment will be entered contemporaneously herewith detailing the distribution of funds as set forth in this Memorandum Opinion.

This 22nd day of May, 2007.

Signed By:
Danny C. Reeves  DCR
United States District Judge

---

[3] This amount will not be reduced by the one-third detailed in the stipulation because Plaintiff Ethel Brock is expressly prohibited from collecting any of that amount under Kentucky law. *See Jefferson*, 982 S.W.2d at 226 ("If [the employee] w[as] allowed to recover the $10,000 from [the defendant] in addition to the benefits she received from the Board, then she would be enjoying double compensation, which is clearly forbidden.")